UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CRIMINAL ACTION NO. 07-62-DLB

UNITED STATES OF AMERICA                                                   PLAINTIFF

vs.                              MEMORANDUM OPINION AND ORDER

TANZ REINALDO SAMUELS                                                   DEFENDANT

********************************

## I.    Introduction

This matter is before the Court on Defendant's Motion to Dismiss the Indictment. (Doc. # 15).  After the government filed its initial response (Doc. #18), the Court heard argument on the motion during a pretrial conference held on October 31, 2007.  (Doc. #20). Based on the arguments raised during the conference, the Court ordered further briefing. (*Id.*)  Defendant has now filed his reply brief (Doc. # 21) to which the government has responded.  (Doc. # 22).  On November 29, 2007, the parties were provided the opportunity to make further oral argument on the motion.  At the conclusion of that hearing, the motion was submitted for decision.  For the following reasons, the motion to dismiss is **denied**.

## II.    Procedural History and Factual Background

The pertinent facts are essentially undisputed.  Defendant Samuels, a native of Trinidad, was convicted in New York state court of Second Degree Rape on December 22, 1999.  The offense date was November 30, 1998.  Defendant was sentenced to four months imprisonment to be followed by a five year term of probation.  Based on that

1

conviction, New York law in effect at the time required that Defendant be designated as a sex offender and register as a sex offender for ten years.  Defendant registered as a sex offender in New York on December 22, 1999.

Defendant's conditions of probation indicated that he was permitted to reside in Miami, Florida, as long as he remained enrolled in St. Thomas University in Florida. Defendant indicated on his initial registration form on December 22, 1999, that he would be residing at 219 N.E. 141 Street, in Miami, Florida.  On the signed New York state registration form, it provides that if Samuels moves his residence to another state, he may be required to register as a sex offender in that state within 10 days of establishing a residence there.  A copy of the New York state registration form has been made part of the record as Joint Exhibit 1.  (Doc. # 19).[1]  The conditions of probation also reflected that Defendant was determined to be a sex offender with a risk level of one and must comply with the provisions of the Sex Offender Registration Act.  (Doc. # 25 at Joint Exhibit 2).

On December 30, 1999, Defendant filed a "Sex Offender Change of Address Form" indicating that his new address was 361 17th Street, #2, Brooklyn, NY 11215.[2]  According to defense counsel, Defendant was scheduled to enroll at Iona University in New York. Other than this initial change of address form, Defendant has never filed any additional change of address forms with the registration authority in New York.  Nor has he registered as a sex offender in Florida or Kentucky.  His last registered address as a sex offender with

---

[1]The signed form further provides that "[m]y obligation and the procedure for registration under the Sex Offender Registration Act have been explained to me.  (Those duties are fully described on the back of this form.)"

[2]  A copy of that form was made part of the record as Joint Exhibit 3 to Doc. # 25.

any jurisdiction was the Brooklyn address on the December 30, 1999, form.

During the October 31, 2007, pretrial conference, Defendant acknowledged that he moved to Kentucky in December 2006. According to the criminal complaint which preceded the filing of the Indictment, Defendant was issued a Kentucky Drivers License on February 22, 2007. (Doc. # 1). Defendant provided a Burlington, Kentucky, address to obtain the license. Over the next several months, Defendant registered a car and motorcycle listing that same Burlington address. (*Id.*) On July 20, 2007, law enforcement officials confirmed that Defendant was residing in Burlington and was working at Auto Zone in Dry Ridge, Kentucky. At no time did Defendant ever register as a sex offender in Kentucky.

On September 13, 2007, the federal grand jury returned a one count indictment against the Defendant charging him with failing to register as a sex offender in violation of 18 U.S.C. § 2250(a). More specifically, the grand jury charged that –

> On or about February 2007 *and continuing through on or about August 27, 2007*, in Boone County, in the Eastern District of Kentucky, Tanz Reinaldo Samuels, a person required to register under the Sex Offender Registration and Notification Act, and a sex offender by reason of a conviction under the law of New York, and having traveled in interstate commerce, did *knowingly fail to register and update a registration*, all in violation of 18 U.S.C. § 2250(a) (emphasis added).

## III.   Issues raised in Defendant's Motion to Dismiss

In his motion to dismiss, Defendant challenges the Indictment on four separate grounds. First, he argues that SORNA violates his constitutional right to due process. Second, because his interstate travel to Kentucky predated the effective date of the Attorney General's interim rule (February 28, 2007), he is not subject to prosecution under SORNA. Third, application of SORNA to his individual situation violates the ex post facto

3

clause of the Constitution.   Finally, SORNA constitutes an unlawful delegation of Congressional authority to the Attorney General.[3]   Each of the issues will be addressed seriatim.

**IV.    Analysis**

      **A.    Statutory Provisions**

On July 27, 2006, President Bush approved Title I of the Adam Walsh Child Protection and Safety Act of 2006, including the Sex Offender Registration and Notification Act, commonly referred to as SORNA.  SORNA creates a federally mandated, national sex offender registry law. *See* 42 U.S.C. § § 16901-1692.  The delineated purpose of SORNA is "to protect the public from sex offenders and offenders against children" and to establish "a comprehensive national system for the registration of those offenders."  42 U.S.C. § 16901. SORNA generally requires the states to conform their sex offender registration laws to the SORNA requirements at the risk of losing federal funding.  SORNA also imposes registration requirements on sex offenders who are subject to federal jurisdiction and makes failure to register as a sex offender subject to a maximum penalty of ten years imprisonment.[4]

---

   [3]  Although Samuels initially argued that SORNA violated his rights under the Interstate Commerce Clause, he has withdrawn that argument as a basis for dismissal of the indictment.

   [4]  Prior to the enactment of SORNA, a 1994 federal law, known as the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Program, made it a misdemeanor to fail to register under a state sexual offender registration program.  See 42 U.S.C. § 14072(l).

Subtitle (A) of SORNA establishes the programs, definitions, and registration requirements.  SORNA defines the term "sex offender" as "an individual who was convicted of a sex offense" and classifies all sex offenders into three different categories.  42 U.S.C. § 16911(1)-(4).  SORNA requires that every jurisdiction maintain a sex offender registry that conforms to certain statutory requirements, 42 U.S.C. § 16912, specifies when a sex offender must initially register, and sets forth the sex offender's continuing obligation to keep the registration current in 42 U.S.C. § 16913.  The statute states in pertinent part:

(a)    In general

A sex offender shall register, and keep registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student.  For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.

(b)    Initial registration

The sex offender shall initially register--

(1) before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or

(2) not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment.

(c)    Keeping the registration current

A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.

(d)    Initial registration of sex offenders unable to comply with subsection (b) of this section

5

The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders *who are unable to comply with subsection (b) of this section.* (emphasis added).

42 U.S.C. § 16913.

Subtitle (B) of SORNA is entitled "Improving Federal Criminal Law Enforcement To Ensure Sex Offender Compliance With Registration and Notification Requirements and Protection of Children From Violent Predators."  This section of the Act amends Title 18 of the United States Code and creates a new federal crime for failure to register as a sex offender.  *See* 18 U.S.C. § 2250(a).  This statute provides:

Whoever--

(1)    is required to register under the Sex Offender Registration and Notification Act;

(2)    (A) is a sex offender as defined for purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States, or

(B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and

(3)    knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act

shall be fined under this title or imprisoned not more than 10 years or both.

18 U.S.C. § 2250(a).  Thus, the essential elements for a § 2250(a) offense are that a defendant:

(1)    was a sex offender as defined under SORNA and, therefore, required to register under SORNA;

6

(2)      traveled in interstate commerce; and

(3)      knowingly failed to register or update a registration as required by SORNA.

Pursuant to its statutory directive to specify the applicability of SORNA to sex offenders convicted before July 27, 2006, and who were unable to comply with the initial registration requirements of 42 U.S.C. § 16913(b), on February 28, 2007, the Department of Justice promulgated an interim rule declaring SORNA retroactive to sex offenders convicted prior to SORNA's enactment.  *See* 72 Fed.Reg. 8894 (Feb. 28, 2007) (codified at 28 C.F.R. § 72 (2007)) [hereinafter Interim Rule].

### B.      SORNA's Application to Samuels Without Notice Does Not Violate Due Process.

As his initial challenge to the Indictment herein, Samuels argues that because he was never notified of SORNA's registration requirements, prosecuting him under SORNA violates his due process rights.  More specifically, although Samuels acknowledges that he was required to register as a sex offender in New York, the records admitted from New York contain nothing about any requirements to register under SORNA.  In fact, it is undisputed that Defendant received no notice of SORNA's registration requirements. However, Defendant was on notice that keeping the New York Division of Criminal Justice abreast of any changes in his home address was a condition of his sex offender registration requirements.  *See* Joint Exhibit 1.  Defendant was also notified that if he moved to another state, he may be required to register as a sex offender within 10 days of establishing residence.  *Id.*  Finally, Defendant's New York sex offender conditions required that he verify his home address once per year for a minimum period of ten years.  *Id.*  By signing these conditions, Defendant knew he was required to register as a sex offender and

7

maintain that registration accurately for at least ten years.  Under these facts, the Court cannot conclude that SORNA violates Samuels' due process rights.

Samuels' due process argument misapprehends the notice requirements in SORNA. Although the statute provides that officials give notice, it does not make receipt of notice an element of the offense.  The fact that Defendant was unaware that he was allegedly in violation of SORNA by not registering is not an affirmative defense.  If failure to have specific knowledge of the particular statute you have been accused of violating were a prerequisite to conviction, there would rarely, if ever, be a conviction.  Due process does not require specific notice.  *See United States v. Dixon*, No. 3:07-CR-72(01)RM, 2007 WL 4553720, at *4 (N.D. Ind. Dec. 18, 2007) ("Few offenders have ever had relevant sections of the U.S. Code read to them before committing their crimes, yet they are expected to comply with it even so. ... Sex offenders ... must comply with the law even when it changes suddenly and without notice, and they are well advised to periodically check for changes because they are particularly subject to regulation.") (internal citation and quotation omitted).  To hold specific notice is required under SORNA would add a constitutional requirement where one has never been required.

Although neither the Sixth nor any of its sister circuits have addressed a due process challenge to SORNA, due process arguments like the one raised by Samuels have been rejected by the majority of district courts to address the issue. *See United States v. Gould*, Crim. No. WDQ-07-0359, 2007 WL 4371418, at *3-4 (D. Md. Dec. 13, 2007); *United States v. Marcantonio,* No. 07-60011, 2007 WL 2230773, at *1-2 (W.D. Ark. July 31, 2007); *United States v. Gonzales,* No. 5:07cr27-RS, 2007 WL 2298004, at *2-4 (N.D. Fla. Aug. 9, 2007); *United States v. Hinen,* 487 F.Supp.2d 747, 754 (W.D. Va. 2007); *United States v.*

8

*Cardenas*, No. 07-80108-CR, 2007 WL 4245913, at *13-14 (S.D. Fla. Nov. 29, 2007); *United States v. Pitts*, Crim. No. 07-157-A, 2007 WL 3353423, at *7 (M.D. La. Nov. 7, 2007); *United States v. Lovejoy*, 516 F. Supp. 2d 1032, 1037 (D.N.D. 2007); *United States v. May*, Nos. 4:07-cr-00164-JEG, 1:07-cr-00059-JEG, 2007 WL 2790388, at *6 (S.D. Iowa Sept. 24, 2007); *United States v. Kent*, Crim. No. 07-00226-KD, 2007 WL 2746773, at *1 (S.D. Ala. Sept. 20, 2007); *United States v. Mitchell*, No. 07CR20012, 2007 WL 2609784, at *2 (W.D. Ark. Sept. 6, 2007).

In this case, Samuels was well aware of his duty to update his registration in New York for ten years. Thus, when he moved to Kentucky and failed to register or update his registration, his prior knowledge of a duty to register under state law qualified as effective notice under SORNA. Samuels' notice of his registration requirements under New York law is sufficient to support a charge that he knowingly violated SORNA.

Given the weight of authority rejecting similar due process attacks on SORNA, Defendant's reliance on two contrary decisions, *United States v. Mason*, 510 F. Supp. 2d 923 (M.D. Fla. 2007), and *United States v. Barnes*, No. 07 Cr. 187, 2007 WL 2119895 (S.D.N.Y. July 23, 2007), is misplaced.

Further, it is a well-settled rule of criminal jurisprudence that ignorance of the law or a mistake of law is no defense to criminal prosecution. *Cheek v. United States*, 498 U.S. 192, 199 (1991). In fact, the common-law rule that every person is presumed to know the law "has been applied by the Court in numerous cases construing criminal statutes." *Id.* (citations omitted); *see also United States v. Baker,* 197 F.3d 211, 218 (6th Cir. 1999) (sustaining a criminal defendant's conviction and reaffirming "the centuries-old maxim that 'ignorance of the law is no excuse' "), *United States v. Ceseer*, 399 F.3d 828, 835-36 (6th

Cir. 2005).

Applying that well-settled rule to Samuels' due process argument leads to the inescapable conclusion that his argument must be rejected. Although he was unaware that registration was required under SORNA, his ignorance of the law is not a defense. In this case, Defendant could have registered in Kentucky (or, in the case of New York, updated his registration). Had he registered with Kentucky or updated his registration with New York with his current address, Samuels would have complied with SORNA. That he was unaware that the consequences of failure to register or update his registration were possible federal charges is of no consequence.

For all of these reasons, due process principles do not foreclose this SORNA prosecution. Thus, the Court denies Samuels' motion to the extent it seeks dismissal of the indictment for failure to provide due process of law.

> **C.** **Although Samuels' Interstate Travel to Kentucky Predates the Effective Date of the Attorney General's February 28, 2007, Interim Rule, Because his Failure to Register or Update his Registration Allegedly Occurred after that Date, Samuels is Properly Subject to Prosecution under SORNA.**

Defendant next argues that because his interstate travel to Kentucky predates the Attorney General's February 28, 2007, Interim Rule, he cannot be prosecuted under SORNA. More specifically, Samuels argues that SORNA does not apply to sex offenders such as himself who traveled in interstate commerce between the enactment of SORNA and February 28, 2007.

Although Defendant indicates that the "bulk of the authority on this issue is in [his] favor," (Doc. #21-2 at 4), the cases he relies upon are factually distinguishable from this

case.  As previously stated, the Indictment alleges that –

> On or about February 2007 *and continuing through on or about August 27, 2007*, in Boone County, in the Eastern District of Kentucky, Tanz Reinaldo Samuels, a person required to register under the Sex Offender Registration and Notification Act, and a sex offender by reason of a conviction under the law of New York, and having traveled in interstate commerce, did *knowingly fail to register and update a registration*, all in violation of 18 U.S.C. § 2250(a) (emphasis added).

Thus, Defendant is charged herein with failing to register or update a registration both before and after the Attorney General's Interim Rule.  It is also undisputed that Samuels' interstate travel occurred after SORNA's passage.  The cases relied upon by him in his brief are inapposite.  For instance, unlike the case herein, in the *United States v. Kapp*, 487 F.Supp.2d 536 (M.D. Pa. 2007), *United States v. Smith*, No. 2:07-cr-00082, 2007 WL 1725329 (S.D. W.Va. June 13, 2007), *United States v. Heriot*, Cr. No. 3:07-323, 2007 WL 2199516 (D.S.C. July 27, 2007), *United States v. Muzio*, No. 4:07CR179 CDP, 2007 WL 2159462 (E.D. Mo. July 26, 2007), and *United Stetes v. Cole*, No. 07-cr-30062-DRH, 2007 WL 2714111 (S.D. Ill. Sept. 17, 2007) decisions, the alleged failure to register or update a registration occurred prior to February 28, 2007.  Moreover, in the *United States v. Deese*, No. CR-07-167-L, 2007 WL 2778362 (W.D. Okla. Sept. 21, 2007) and *United States v. Sallee*, No. CR-07-152-L, 2007 WL 3283739 (W.D. Okla. Aug. 13, 2007) decisions, although the alleged failure to register or update a registration occurred both before and after February 28, 2007, it was undisputed that the defendant's travel in each of those two cases occurred *before* SORNA's enactment.  For these reasons, Defendant's reliance on those cases is misplaced.

In this case, Defendant's interstate travel occurred after SORNA's enactment, and the Indictment charges him with failing to register or update a registration for time periods

11

*after* the Attorney General's February 28, 2007, Interim Rule.  Under those facts, Samuels was properly charged in the Indictment, and his motion to dismiss on that basis is denied. *See Gould,* 2007 WL 4371418, at *3; *United States v. Rich*, No. 07-00274-01-CR-W-HFS, 2007 WL 4365736, at *1 (W.D. Mo. Nov. 19, 2007).

### D.    The Application of SORNA to Samuels in this Case Does Not Implicate the Ex Post Facto Clause of the Constitution.

Samuels next argues that SORNA violates the Ex Post Facto Clause of the Constitution.  The Government counters that SORNA is not punitive and therefore not violative of the ex post facto clause.  For the reasons that follow, the Court agrees with the government's position on this issue.

It is well settled that the constitutional prohibition of the ex post facto doctrine applies "only to penal statutes which disadvantage the offender affected by them."  *Collins v. Youngblood*, 497 U.S. 37, 41(1990).  A law violates the ex post facto clause if it punishes as a crime an act that was not criminal when it was committed or makes the punishment for a crime greater than when the crime was committed.  *Id.* at 52.  Therefore, in evaluating Samuels' ex post facto challenge, the Court must "ascertain whether [Congress] meant the statute to establish 'civil proceedings.' "  *Smith v. Doe*, 538 U.S. 84, 92 (2003).  If a law, however, despite being civil and nonpunitive on its face, is so punitive in purpose or effect as to negate the intent of the legislature, then it will be in violation of the Constitution.  *Id.*

Despite Samuels' attempts to distinguish *Smith v. Doe*, that case controls the outcome of his ex post facto challenge.  In *Smith*, respondents had challenged Alaska's Sex Offender Registration Act that required them to register as sex offenders, even though they had been convicted before the Act's enactment.  After considering the statute's text

12

and structure, the Supreme Court held "the intent of the Alaska legislature was to create a civil nonpunitive regime." *Id.* at 96.  Imposing restrictive measures on sex offenders adjudicated to be dangerous is a "legitimate nonpunitive governmental objective." *Id.* at 93 (internal citation and quotation omitted).  The Supreme Court concluded that the retroactive application of Alaska's sex offender registration does not violate the ex post facto clause. *Id.* at 97-98.

As pointed out by the Government in its brief, the Congressionally stated purpose of SORNA is "to protect the public from sex offenders and offenders against children ... [and to] establish[ ] a comprehensive national system for the registration of [sex] offenders." 42 U.S.C. § 16901.  Thus, SORNA's registration requirement is functionally indistinguishable from the Alaskan requirement at issue in *Smith*.  *See United States v. Gill*, No. 2:06-CR-00725 PGC, 2007 WL 3018909, at *3 (D. Utah Oct. 15, 2007).  As many district courts have  held, SORNA's registration regime has not historically been regarded as a punishment, does not impose an affirmative disability or restraint, does not promote the traditional aims of punishments, has a rational connection to a nonpunitive purpose, and is not excessive with respect to the nonpunitive purpose.  *See United States v. Madera*, 474 F.Supp.2d 1257, 1263 (M.D. Fla. 2007.).  In fact, relying on the Supreme Court's decision in *Smith*, virtually all courts reviewing SORNA have held that SORNA does not generally violate the ex post facto clause. See *United States v. LeTourneau*, Crim. No. B-07-855, 2008 WL 112105, at *3 n.1 (S.D. Tex. Jan. 9, 2008).[5]  This Court agrees that SORNA does not violate the ex post facto clause of the Constitution.

---

[5]  In *LeTourneau*, Judge Hanen cited to seventeen district court cases which had rejected ex post facto challenges to SORNA.

13

Samuels' as-applied challenge to SORNA also fails.  Although the facts of some cases have dictated dismissals of indictments on ex post facto grounds, those cases, cited and relied upon by Samuels, are easily distinguishable from those herein.  In Samuels' case, it is undisputed that he traveled to Kentucky *after* SORNA's enactment.  It is further undisputed that he is charged with failing to register or update a registration for time periods after the Attorney General's Interim Rule.

As previously discussed in section IV(C) of this Memorandum Opinion and Order, the *Kapp*, *Sallee*, *Muzio, Cole*, and *Marvin Smith* cases each involved situations where either the defendant's interstate travel occurred prior to SORNA's enactment, or it was alleged that the defendant's failure to register or update a registration occurred entirely before the Attorney General's Interim Rule, circumstances that do not apply to Samuels' case.  For the very same reasons, Defendant's reliance on *United States v. Smith*, 481 F.Supp.2d 846 (E.D. Mich. 2007), is equally misplaced.  Although Judge Borman dismissed the indictment therein on ex post facto grounds, the Defendant in *Smith* had traveled in interstate commerce prior to SORNA's July 2006, enactment.

Accordingly, SORNA, both facially and as applied to Samuels, raises no ex post facto concerns, and Defendant's motion to dismiss the Indictment on those grounds is overruled.

### E.    SORNA Does Not Violate the Non-Delegation Doctrine.

As his final ground to dismiss the Indictment, Defendant argues that SORNA constitutes an unlawful delegation of Congressional authority to the Attorney General. More specifically, Defendant maintains that 42 U.S.C. § 16913(d) states that the "Attorney General shall have the authority to specify the applicability of the requirements of this

14

subchapter to sex offenders convicted before July 27, 2006."   Based upon his interpretation, Defendant argues that allowing the Attorney General, rather than Congress, to determine if a law applies retroactively is a clear and unlawful delegation of Congressional authority.  Defendant's argument is misplaced.

The authority granted to the Attorney General in § 16913(d) is limited to narrowly prescribed circumstances.  More specifically, the Attorney General is authorized to promulgate rules which apply to "initial registration of sex offenders unable to comply with subsection (b) of this section."  In this case, Defendant does not fall within the provisions of § 16913(d).  Because Defendant was able to comply with New York state's initial registration requirements, that section and the Interim Rule do not apply to him.  *See, e.g., United States v. Elliott,* No. 07-14059-CR, 2007 WL 4365599 (S.D. Fla. Dec. 13, 2007)*; Dixon*, 2007 WL 4553720*; United States v. Templeton*, No. CR-06-291-M, 2007 WL 445481 (W.D. Okla. Feb. 7, 2007).   Therefore, as applied to Defendant, § 16913(d) cannot constitute an unlawful delegation of Congressional authority.

As recently stated by Judge Quarles in *Gould*:

> The Supreme Court has only twice found the nondelegation doctrine violated. *See Panama Refining Co. v. Ryan*, 293 U.S. 388 (1935); *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935).  The nondelegation doctrine stems from the tripartite system of our federal government.  *Mistretta v. United States*, 488 U.S. 361, 371 (1989). The Constitution provides that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States," U.S. Const. art. I, § 1, and an overly broad delegation of that authority impedes our constitutional structure, *see Indus. Union Dep't v. Am. Petroleum Inst.*, 448 U.S. 607, 673 (1980) (Rehnquist, J., concurring).  But so long as "Congress shall lay down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform, such legislative action is not a forbidden delegation of legislative power."  *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928).

2007 WL 4371418, at *4.

Congress's delegation of authority to the Department of Justice is not unlike the myriad of situations where Congress has enacted legislation and a federal agency implements rules and regulations implementing the statute. SORNA clearly defines what conduct is proscribed, and the Attorney General's Interim Rule determining its retroactivity to certain offenders convicted before SORNA's enactment is not an unlawful delegation of Congressional authority.

Additionally, as is the case with the other constitutional challenges to SORNA brought by Samuels, neither the Sixth nor any other circuit court has addressed an unlawful delegation challenge to SORNA. However, every district court considering whether 42 U.S.C. § 16913(d) violates the non-delegation doctrine has declined to find it an unconstitutional congressional delegation of authority. *See LeTourneau*, 2008 WL 112105, at *6; *Gould*, 2007 WL 4371418, at *4-5; *Madera*, 474 F.Supp.2d. at 1261; *Gonzales*, 2007 WL 2298004, at *12; *Hinen*, 487 F.Supp.2d at 751-53; *May*, 2007 WL 2790388, at *6; *Lovejoy,* 516 F. Supp. 2d at 1034-36; *Pitts*, 2007 WL 3353423, at *7-8. This Court agrees with those holdings that SORNA is not an unconstitutional delegation of power to the Attorney General.

### V.    Conclusion

Having considered Samuels' motion to dismiss and the arguments therein, and being otherwise sufficiently advised, **IT IS ORDERED** as follows:

1.    Defendant's Motion to Dismiss the Indictment (Doc. # 15) be, and is hereby is **denied**;

2.     The time period from October 11, 2007 through the date of this Order, totaling 98 days, is deemed **excludable time** pursuant to Title 18, United States Code § 3161(h)(1)(F);

3.     This matter is scheduled for a Pretrial Conference on **January 23, 2008** at **9:00 a.m.** at which time the Court will set this matter for trial.

This 17th day of January, 2008.



Signed By:

*David L. Bunning*

**United States District Judge**

G:\DATA\ORDERS\CovCrim\2007\07-62 Samuels MOO denying MTD IndictmentDRAFT2.wpd

17